# UNITED STATES DISTRICT COURT

SOUTHERN   District of  NEW YORK

Jane Freed,

Plaintiff,

- against -

First UNUM Life Insurance Company,

Defendant.

## SUMMONS IN A CIVIL CASE

CASE NUMBER:

# 06 CV 13721

TO: (name and address of defendants)

First UNUM Life Insurance Company
99 Park Avenue, 6th Floor
New York, NY 10016

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY,
(name and address)

**DeHAAN BUSSE LLP
300 Rabro Drive
Suite 101
Hauppauge, New York 11788**

an answer to the complaint which is herewith served upon you, within __20__ days after service of
this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default
will be taken against you for the relief demanded in the complaint.  You must also file your answer
with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON

CLERK

(BY) DEPUTY CLERK

DEC 0 4 2006

DATE



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------X

JANE FREED,

                        Plaintiff,

         – against –

FIRST UNUM LIFE INSURANCE COMPANY,

                     Defendants.
--------------------------------------------------X

**06 CV 13721**

Civil Action No.:

**COMPLAINT**

Plaintiff, Jane Freed, by her attorneys, DEHAAN BUSSE LLP, for her Complaint against the Defendant, First UNUM Life Insurance Company ("First UNUM"), alleges as follows:

### JURISDICTION AND VENUE

1.       Jurisdiction of the Court is based upon 29 U.S.C. §§ 1132(e)(1) and 1132(f) which give the District Courts jurisdiction to hear civil actions brought to recover benefits due under the terms of an employee welfare benefit plan. In addition, this action may be brought before this Court pursuant to 28 U.S.C. § 1331, which gives the District Court jurisdiction over actions that arise under the laws of the United States.

2.       Under the Employee Retirement Income Security Act of 1974 (hereinafter, "ERISA") (29 U.S.C. §§ 1001 et seq.), the long term disability plan at issue in this litigation must contain provisions for administrative or internal appeal of denial of benefits. Plaintiff has exhausted all administrative avenues of appeal and has received a final denial. Therefore, this matter is properly before this court for *de novo* judicial review under Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989).

3.       Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) which allows an action under Title I of ERISA, as amended, to be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found.

## NATURE OF ACTION

4.      This is a claim seeking a declaration that Plaintiff is entitled to disability income benefits pursuant to the terms and conditions of an employee welfare benefit plan.

5.      The GLM, Inc. Long Term Disability Plan (the "LTD Plan") provides group long term disability benefits for employees of George Little Management, Inc. ("GLM"). As Defendant is an employee benefit welfare plan established and maintained by an employer or employee organization for the benefit of its employees, ERISA applies to this action. Said benefits were effective at all times relevant hereto.

6.      Claims for benefits are administered and paid through a Long Term Disability Policy, issued by Defendant, First UNUM. Defendant, First UNUM, has made all of the claims decisions in this matter.

7.      This action is related to the Prior Action entitled Jane Freed v. The George Little Management Long Term Disability Plan and First UNUM Life Insurance Company, Civil Action No. 02 CV 3004 (CLB), which was dismissed without prejudice pending a decision by Defendant on the Claim Reassessment Process.

## THE PARTIES

8.      Plaintiff was born on September 12, 1939, is presently 67 years old, and is a resident of Sunny Isle Beach, Florida.

9.      Defendant, First UNUM, is an insurance company licensed to conduct the business of insurance in the State of New York. Upon information and belief, benefits under the LTD Plan are provided through a group insurance policy issued by First UNUM. First UNUM's address is 99 Park Avenue, 6th Floor, New York, New York 10016.

## STATEMENT OF FACTS

Plaintiff's Occupation:

10.     Plaintiff became an employee of GLM on November 3, 1986. Plaintiff continued working for GLM through September 28, 1999, on which date she became disabled. As such, she

was a covered participant in the LTD Plan.

11.     Prior to, and including September 28, 1999, Plaintiff was employed by GLM as a customer service representative for the registration services department at GLM. Plaintiff's duties included: attending and assisting in the operation of trade shows; clerical responsibilities; computer operation; and answer telephone calls. Almost 10% of Ms. Freed's time at work was spent traveling on company business.

12.     When not traveling, Plaintiff's occupation required her to sit continuously for long periods of time.

13.     When traveling for work to attend and assist in the operation of trade shows, Ms. Freed's occupation required her to stand for long periods of time without a break.

14.     As a result of having to travel to, attend and assist in the operation of GLM's trade shows, the exertional level of Ms. Freed's occupation would be classified as light work.

15.     Ms. Freed's occupation most closely resembles that of an Exhibit-Display Representative, as classified by the DICTIONARY OF OCCUPATIONAL TITLES (4th Ed. Revised 1991) ("DOT"), 297.367-010.

16.     For the period beginning prior to September 28, 1999, and at all relevant times hereto, Plaintiff together with other regular employees of GLM, was covered as a participant under the Defendant, LTD Plan.


The Terms of the LTD Plan:

17.     The LTD Plan provides for payment of monthly income benefits to participants of the LTD Plan who become disabled.

18.     First UNUM, as the insurer of the LTD Plan, pays LTD benefits out of its own coffers. In this position, First UNUM could significantly reduce its operating expenses, and increase its profits, simply by denying claims. This would be a direct dollar-for-dollar effect. As such, First UNUM is operating under a significant conflict of interest which had a material effect on its decision on this claim.

19.     The monthly benefit is determined based on a set percentage (66.667%) of pre-

disability eligible compensation and reduced by other income benefits as these terms are identified
in the LTD Plan, including Social Security disability benefits.

20.    In the event of "total disability," benefits commence after a 180-day elimination
period, and can continue through a maximum benefit period of 60 months, based on Plaintiff's age.
In Plaintiff's case, benefits should have begun as of March 26, 2000 – after the expiration of the 180-
day elimination period.

21.    The LTD Plan contains the following relevant definition of "total disability:"

You are disabled when UNUM determines that:

– you are **limited** from performing the **material and substantial
duties** of your **regular occupation** due to your **sickness** or **injury**;
and
– you have a 20% or more loss in your **indexed monthly earnings**
due to the same sickness or injury; and
– during the elimination period, you are unable to perform any of the
material and substantial duties of your regular occupation.

The LTD Plan's Summary Plan Description, p. 15 (emphasis in original).

22.    The LTD Plan requires claimants to apply for "Deductible Sources of Income," which
includes benefits received pursuant to the United States Social Security Act.

23.    Moreover, if Plaintiff does not apply for "Deductible Sources of Income," First
UNUM can penalize Plaintiff by estimating the amount of the "Deductible Sources of Income" and
reducing the amount of the LTD benefit by that amount. The LTD Plan states:

**WHAT IF UNUM DETERMINES YOU MAY QUALIFY
FOR DEDUCTIBLE INCOME BENEFITS?**
When we determine that you may qualify for benefits under Item(s)
1., 2., and 3. [*i.e.*, Social Security disability] in the deductible sources
of income section, we will estimate your entitlement to these benefits.
We can reduce your payment by the estimated amounts if such
benefits:
– have not been awarded; and
– have not been denied; or
– have been denied and the denial is being appealed.
Your Long Term Disability payment will NOT be reduced by the
estimated amount if you:
– apply for the disability payments under Item(s) 1., 2., and 3. in the
deductible sources of income section and appeal your denial to all
administrative levels UNUM feels are necessary; and
– sign UNUM's payment option form. This form states that you
promise to pay us any overpayment cause by an award.

24.    In order to not have First UNUM deduct a claimant's estimated Social Security

benefit from her long-term disability benefit while the Social Security claim is pending, the insurance carrier forces the claimant to sign a reimbursement agreement.

Plaintiff's Disability:

25.    On or about June 16, 1997, Plaintiff was injured in an automobile accident, when the automobile she was in was rear-ended by a pickup truck. As a result of the injuries sustained in this accident, Plaintiff experiences severe pain in her back, leg, head, arms and fingers.

26.    In September 1997, Plaintiff underwent an MRI which revealed a herniated disc at L5-S1. Plaintiff then underwent a lumbar laminectomy on July 7, 1998, but continued to experience lower back pain, with pain and numbness radiating down her leg.

27.    Despite the fact that Plaintiff continued to experience the same symptoms after the surgery, she attempted to return to work until September 28, 1999 – when she was unable to continue working due to the severity of her injuries.

28.    Plaintiff has received continued medical treatment for her numerous conditions.

29.    With regard to Plaintiff's claim for benefits under the LTD Plan, on or about September 28, 1999, Plaintiff could no longer tolerate her condition, and she was unable to return to work after that date.

30.    All of Ms. Freed's treating physicians have stated that she is totally disabled from her own and any occupation.

31.    Plaintiff was thereby rendered totally disabled within the definition of the LTD Plan's description: "**limited** from performing the **material and substantial duties** of [her] **regular occupation** due to [her] **sickness** or **injury**." Plaintiff continues to be so disabled.

## PLAINTIFF'S FIRST CAUSE OF ACTION FOR LONG-TERM DISABILITY BENEFITS

First UNUM's Administrative Review Prior to Reassessment:

32.    With regard to Plaintiff's claim for benefits under the LTD Plan, she continued to

work though September 28, 1999.

33.     On September 28, 1999, Plaintiff was forced to stop working because of severe pain in her back, leg, head, arms and fingers.

34.     In compliance with the terms and conditions of the LTD Plan, Plaintiff timely applied for such benefits.  Under the LTD Plan, benefits were to commence as of March 26, 2000, *i.e.* after the 180-day elimination period.

35.     On June 5, 2000, First UNUM advised Plaintiff by letter that her claim for benefits had been denied.

36.     In that denial letter, First UNUM applied a different standard than the one provided for in the Summary Plan Description and stated that it had determined the Plaintiff could perform the "essential and material duties" of her occupation.

37.     Plaintiff requested an administrative review of First UNUM's adverse decision and submitted additional medical documentation in support of her claim.

38.     By letter dated July 18, 2000, First UNUM advised Plaintiff that it was upholding its denial of benefits.

39.     On or about August 7, 2000, the Social Security Administration ("SSA") determined that Plaintiff was disabled as of September 28, 1999, as defined by the Social Security Act: unable to engage in any substantial gainful activity (*See*:  42 U.S.C. §416(i) - Definition of "Disability" in the Social Security Act).

40.     Plaintiff again requested an administrative appeal from First UNUM and submitted in support of her claim a copy of the August 7, 2000 decision from the Social Security Administration.

41.     First UNUM once again upheld its adverse decision by letter dated November 17, 2000, based upon a review of the Plaintiff's medical records by First UNUM's in-house "medical" department, which made a determination (without any examination) of Plaintiff's restrictions contrary to the findings of every physician who actually did examine Ms. Freed.

42.     Although it had received a copy of the Social Security Administration's decision finding Ms. Freed disabled and even though First UNUM would receive a pecuniary benefit from

Plaintiff's receipt of Social Security disability benefits, First UNUM did not even address the findings of the Social Security Administration in its November 17th denial.

43.    Plaintiff appealed once again on January 27, 2001, through her prior counsel, and additional medical documentation was submitted on her behalf.

44.    First UNUM once more denied Plaintiff's claim by letter dated June 21, 2001, in which it stated that it did Plaintiff did not qualify for benefits under the Policy.

45.    First UNUM's June 21st determination was based upon another paper review by its "medical" department – which confined its record review to the new medical documentation submitted and First UNUM's prior reviews. That is, the reviewing "doctor" at First UNUM did not even personally review all of the medical documentation in the claim file and instead relied upon the reports of prior reviews by other individuals.

46.    Although First UNUM claimed in its June 21, 2001, letter that Plaintiff was not entitled to benefits under the LTD Plan which it insured, on August 14, 2001, Defendant nonetheless offered Plaintiff $3,000 in exchange for her signing a Settlement & Release agreement waiving all of her rights to benefits under the LTD Plan.

47.    Plaintiff initiated a lawsuit in the United States District Court for the Southern District of New York against the Defendants listed above by serving them with a summons and complaint on or about April 3, 2002 (the "initial action").

48.    During the Prior Action, it became apparent that despite Plaintiff's counsel's request for copies of all of the "pertinent" documents (*i.e.*, the Administrative Record) related to this claim, Plaintiff was not provided with a full and complete copy of her claim file.

49.    During the "administrative" review process, First UNUM only provided 321 pages of documents. However, as its initial disclosures in the Prior Action, First UNUM produced 426 pages of what was identified as the "Administrative Record."

50.    Among the documents removed were letters from John Buttine Insurance, Inc., First UNUM own insurance sales agent, stating that Ms. Freed's own occupation should be considered light work and that she therefore should be considered totally disabled.

51.    Defendant also failed to advise Plaintiff, or provide her with, its color-coded tabbing

system which its claims personnel utilized in reviewing this claim.

52.    The initial action was discontinued without prejudice and without costs, with leave to re-file as a related case, pending the results of the Claim Reassessment Process established as a result of the Regulatory Settlement Agreement between First UNUM and the U.S. Department of Labor and the 50 State Insurance Departments.

First UNUM's Review Upon Reassessment:

53.    By letter dated March 24, 2006, Plaintiff, through counsel, submitted the completed Claim Reassessment Forms and additional medical information for First UNUM's consideration.

54.    By letter dated June 26, 2006, First UNUM upheld the prior denial of Ms. Freed's claim for LTD benefits.

55.    Said denial was based, in part, on the fact that First UNUM's vocational consultant again improperly mischaracterized Plaintiff's regular occupation as sedentary work instead of light work.

56.    The Regulatory Settlement Agreement ("Settlement Agreement") makes clear that First UNUM must, among other things, appropriately use and consider the opinions of in-house medical resources.

57.    Based on its June 26, 2006, denial letter, there is no indication that First UNUM consulted any of its in-house medical resources prior to issuing the denial upon Reassessment.

58.    First UNUM failed to fairly interpret or apply information from Ms. Freed's treating physicians as required by the Settlement Agreement.

59.    The Settlement Agreement also requires First UNUM to contact a claimant's attending physician if the carrier had reason to question the opinions or information provided by a claimant's attending physician.

60.    It is clear that First UNUM questioned the opinions of Plaintiff's treating physicians as Ms. Freed's treating physicians concluded that she was totally disabled and the carrier found Ms. Freed not totally disabled. Yet, First UNUM failed to have one of its in-house medical consultants contact Ms. Freed's treating physicians for clarification of her residual functional capacity as

required by the Settlement Agreement.

61.     As mentioned above, Plaintiff is a 67 year-old woman who suffers from severe pain in her back, leg, head, arms and fingers. In its June 26, 2006, denial letter, First UNUM concentrated solely on Ms. Freed's back and neck impairments and ignored her leg, head, hands and finger pain and impairments.

62.     Ms. Freed has been diagnosed with Post Traumatic Headaches, findings consistent with Carpal Tunnel Syndrome and Bilateral Ulnar Neuropathy at the elbow, along with her back and neck impairments.

63.     First UNUM's failure to consider the combined effect of Plaintiff's numerous medical conditions on her residual functional capacity is yet another violation of the Settlement Agreement.

64.     In seeking to further its own pecuniary interest, First UNUM has denied Plaintiff of her right to a full and fair review both during the administrative review process and during the reassessment process.

65.     First UNUM, as the insurer of the LTD Plan, pays LTD benefits out of its own coffers. As such, First UNUM is operating under a significant conflict of interest which had a material effect on its decision-making on this claim.

66.     First UNUM, as the claims administrator for the LTD Plan, is a fiduciary, as defined by ERISA, and owes a fiduciary duty to Plan participants such as Ms. Freed.

67.     The LTD Plan, as an employee welfare benefit plan under ERISA, also owes a fiduciary duty to Ms. Freed and other Plan participants.

68.     The LTD Plan's fiduciary duty requires that it select an insurer/claims administrator who will: administer claims in accordance with plan terms; fairly and objectively apply plan terms and evaluate medical evidence; and comply with ERISA and its regulations.

69.     The LTD Plan, through its plan administrator and First UNUM's own sales agent, advised the carrier that it agreed with the Social Security Administration ("SSA") and found Ms. Freed to be disabled. First UNUM ignored them.

70.     First UNUM also ignored the Regulatory Settlement Agreement, which states "In conducting all reviews, including but not limited to reviews conducted pursuant to the Claim

Reassessment Process, the UnumProvident Companies must give significant weight to evidence of an award of Social Security disability benefits as supporting a finding of disability, unless the UnumProvident Companies have compelling evidence that the decision of the Social Security Administration was (i) founded on an error of law or an abuse of discretion, (ii) inconsistent with the applicable medical evidence, or (iii) inconsistent with the definition of disability contained in the applicable insurance policy."

71.    First UNUM failed to give the favorable SSA decision significant weight in light of the fact that none of the three (3) factors that would allow First UNUM to disregard the findings of the SSA are present in this case.

72.    Fiduciaries have a statutory obligation, in performing their duties, to act prudently and solely in the interest of plan participants and beneficiaries, and strictly in conformance with the provisions of the plan.

73.    The long term disability claim decisions rendered in the instant action have been made by the First UNUM, which upon information and belief, has a pecuniary interest in denying claims.

74.    This pecuniary interest created a conflict of interest, which had a direct and significant effect in First UNUM's decision making on Ms. Freed's LTD claim.

75.    Fiduciaries also have a statutory obligation to fairly interpret and construe the terms of the plan and thereby make decisions in accordance with plan language.

76.    Upon information and belief, First UNUM's decisions were not supported by the medical evidence and moreover, did not apply the language of the LTD Plan.

77.    First UNUM's decisions in the instant claim were not supported by the evidence submitted with Plaintiff's claim.

78.    Plaintiff was and remains disabled within the terms and conditions of the LTD Plan. Plaintiff is, therefore, entitled to the receipt of monthly Long Term Disability benefits pertaining to her disability from March 26, 2000, and continuing to the present under the LTD Plan.

**WHEREFORE,** Plaintiff respectfully requests the following relief:

a.     That the Court declare and then determine that under the terms of the LTD Plan and Group Policy that the Plaintiff's disability began on or about September 28, 1999, and that she continues to be disabled within the LTD Plan's provisions;

b.     That after making such a determination, the Court order Defendant, First UNUM, to compensate Plaintiff for her disability in accordance with the LTD Plan and the Group Policy issued to the LTD Plan by First UNUM;

c.     That the Court award Plaintiff her attorneys' fees pursuant to 29 U.S.C. § 1132(g); and

d.     That Plaintiff receive such other necessary and proper relief, including interest, costs and disbursements, as to which she may be entitled.


Dated: December __, 2006
       Hauppauge, New York


                                    DEHAAN BUSSE LLP

                         By:    _____
                                    John W. DeHaan (JWD 8863)
                                    Attorneys for Plaintiff
                                    300 Rabro Drive
                                    Suite 101
                                    Hauppauge, New York 11788
                                    Telephone: (631) 582-1200
                                    Facsimile: (631) 582-1228